UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Francine Barr,

       Plaintiff,

-v-                                   Case No. 2:04-cv-01131
                                         Judge Michael H. Watson

The Smith & Wollensky Restaurant
Group, et al.,

       Defendants.

## OPINION AND ORDER

Plaintiff asserts defendants discriminated against her because of her sex by failing to hire her as a bartender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5. This matter is before the Court on defendants' motion for summary judgment. For the reasons that follow, the Court grants defendants' summary judgment motion in part and denies it in part.

### I. Facts

Plaintiff Francine Barr is an individual citizen of the State of Ohio. She has twenty-two years of experience working as a bartender.

Defendants are Smith & Wollensky Restaurant Group, Inc. and Smith & Wollensky of Ohio (collectively "defendants" or "Smith & Wollensky"). Smith & Wollensky operates New York-style steakhouses in several locations nationwide, including Columbus, Ohio. Each Smith & Wollensky restaurant has a bar.

Smith & Wollensky opened a restaurant at the Easton Town Center in Columbus, Ohio on June 3, 2002. It sent Eli Levy to open the Columbus restaurant. Levy was based in Miami, and was Smith & Wollensky's regional director in charge of the Miami, Florida and Washington D.C. restaurants. He was also the opening coordinator for new restaurants, including the Columbus restaurant. In the latter capacity, Levy was responsible for ensuring staff was hired and trained. Levy also had overall responsibility for the operation of the Columbus restaurant until after it opened. Levy made the final decisions concerning the hiring of new employees. Levy attended high school in Israel, and spent about five years in the Israeli Army. Levy Dep. at 6-7.

Eric Kiefer was the beverage manager for the Columbus restaurant from May 2002 through June 2005. He transferred from Smith & Wollensky's Miami restaurant to Columbus in mid-May 2002. As beverage manager, Kiefer was in charge of the procurement of all beverages for the Columbus restaurant. Kiefer was also responsible for hiring, disciplining and firing bar staff.

Before the Columbus restaurant opened, Smith & Wollensky ran an advertisement in *The Columbus Dispatch* seeking applicants for various restaurant positions, including bartenders. Kiefer reviewed applications for bartender positions in late April and early May 2002 while he was still in Miami. About two dozen people applied for the bartender positions. Of these, Kiefer selected about twelve to fifteen to interview. In deciding which applicants to interview, Kiefer examined each applicant's bartending experience. Bartending experience at a high-end restaurant "grabbed" Kiefer's attention, although it was not a requirement. Kiefer automatically disqualified

applicants who lacked any bartending experience, as well as applicants who did not complete the application.

While interviewing, Kiefer relied on his subjective "gut reaction" to determine whether an applicant had the right personality for the restaurant.  Keifer was looking for applicants who were both outgoing and serious-minded.  Keifer was also looking for applicants who would be team players and willing to work within the Smith & Wollensky system in which bartender tips were pooled.  From the twelve to fifteen applicants Kiefer interviewed, Kiefer selected seven men to work as bartenders at the Columbus restaurant.  Kiefer's hiring decisions were subject to the final approval of Eli Levy. According to Kiefer, Levy sat in on some of the interviews of bartender applicants. Kiefer Dep. at 16-17. Levy denies this. Levy Dep. at 64.

Defendants aver they have no record of ever receiving an application from plaintiff.  Plaintiff provides the following account of applying for a bartender position at the Columbus restaurant:

Plaintiff was working as a bartender at the Medallion Club in Columbus in April or May 2002, when a customer, Dave Wyatt, told her that Smith & Wollensky was going to open a restaurant at the Easton Town Center.  Wyatt, a vodka vendor, said he knew Kiefer, and that Kiefer told him the restaurant was opening.  Wyatt urged plaintiff to apply for a bartender position, and told her she should tell them that she knew him. Wyatt gave Barr one of Kiefer's business cards.

That day, Barr went to the new Smith & Wollensky restaurant after she was finished working at the Medallion Club.  Barr avers the restaurant was still under

construction when she arrived to fill out an application.[1]  A Smith & Wollensky employee who identified himself as Eli gave her an application.  Eli had a foreign accent.  Plaintiff filled out the application and gave it to Eli.  Eli told her "they would look it over and give [her] a call within a couple of days."  Barr Dep. at 32.  Plaintiff remembers that when Eli looked at her application, he joked about her being in the military.  Plaintiff left.  Levy denies that he ever handed out job applications, Levy Dep. at 59, that he ever saw or talked to applicants, *id.* at 60, or that he ever personally received a job application.  *Id.* at 62.

Plaintiff says she called Eli a few days later.  Plaintiff alleges Eli told her "they were still reviewing the applications, but he hadn't forgotten [her] and that they would get back to [her]."  *Id.* at 38.  Plaintiff called Eli again three days later.  Plaintiff avers Eli told her "we're still, you know, under construction and we haven't made any decisions, but he said . . . that he would call me back again."  *Id.* at 40.  Plaintiff alleges she called Eli again about one week later.  She apologized for bothering him, and he said he had not forgotten her, but they had been busy as a result of the opening.  Eli told plaintiff he would get back to her.  That was the last time plaintiff talked with Eli.  About a month later plaintiff left two messages for Eli, but no one returned her calls.  Levy does not recall talking with plaintiff on the telephone.  Levy Dep. at 65.

Plaintiff went to the Columbus Smith & Wollensky restaurant in August 2002.  She asked to see the manager.  A man named Chuck introduced himself as the manager.  Chuck asked plaintiff to fill out a job application.  Plaintiff explained she had already filled out an application when the store was opening.  Chuck told plaintiff if she

---

[1]  Kiefer corroborates plaintiff's description of the area where job applications were filled out.  Kiefer Dep. at 58.

had filled out an application it would likely be on file. He then said Kiefer was in charge of hiring bartenders. At the time, Kiefer was busy working on inventory, so plaintiff left without speaking to him.

In September 2002, plaintiff saw a newspaper advertisement seeking applicants for bartender positions at the Columbus Smith & Wollensky restaurant. She called the restaurant and made an appointment with Kiefer. At the appointment, plaintiff told Kiefer she had been at the restaurant at the opening and had submitted a job application. Kiefer said he had filled the bartender position with a person who had already been working at Smith & Wollensky as a bar back. Kiefer told plaintiff the bartender job had long hours and required heavy lifting. Kiefer also indicated there were no bartender positions available and the advertisement should not have been placed in the newspaper. Plaintiff asserts she told Kiefer that she had heard Smith & Wollensky did not hire women bartenders. Plaintiff maintains Kiefer responded by telling her there used to be two in the company, but now there was one.

Defendants did not hire plaintiff.

Plaintiff filed a timely charge with the Equal Employment Opportunity Commission ("EEOC"), asserting age and gender discrimination. The EEOC found defendants discriminated against plaintiff on the basis of her sex. The EEOC issued a right to sue letter to plaintiff on August 30, 2004. Plaintiff timely filed the instant lawsuit on November 26, 2004.

## II. Summary Judgment

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150-51 (2000). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Id.* Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identified a number of important

principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby,* 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita,* 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris,* 260 F.3d 654, 665 (6th Cir. 2001).

### III. Discussion

#### A. Direct evidence

Defendants repeatedly argue plaintiff has failed to adduce direct evidence of discrimination. Plaintiff does not purport to submit direct evidence of discrimination.

There will rarely be a situation when direct evidence of discrimination is readily available, and there will seldom be an "eyewitness" to the employer's mental processes. One would hardly expect an employer in 2002 to tell a female applicant she was not being hired because of her sex. In recognition of this fact, plaintiffs claiming disparate

treatment discrimination may, alternatively, establish their cases through inferential and circumstantial proof as established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

### B. *Prima facie* case

In an employment discrimination action the plaintiff may prove discrimination by direct evidence or by establishing a *prima facie* case. The elements of a *prima facie* case of employment discrimination are:

1.  the plaintiff is a member of a protected class;

2.  the plaintiff was qualified for the position;

3.  the defendant subjected the plaintiff to an adverse employment action; and

4.  the defendant did not subject similarly situated persons outside the protected class to such adverse actions.

*St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 506 (1993); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).

In the instant case, defendants argue the Court should require plaintiff to show that she was considered for the position as part of her *prima facie* case. Plaintiff argues the "considered for" requirement applies only in failure to promote cases.

The "considered for" requirement appears to have been introduced in the Sixth Circuit in *Brown v. State of Tennessee*, 693 F.2d 600 (6th Cir. 1982). In *Brown*, the court stated as follows:

> We agree with Judge J. Skelly Wright, that:
> Adjusting the *McDonnell* formula cases of discriminatory refusal to promote is relatively simple. Thus to make out a prima facie case the plaintiff must show that she belongs to a protected group, that she was qualified for and applied for a promotion, that she was considered for and

denied the promotion, and that other employees of similar qualifications who were not members of the protected group were indeed promoted at the time the plaintiff's request for promotion was denied.

693 F.2d at 603 (quoting *Bundy v. Jackson,* 641 F.2d 934, 951 (D.C.Cir.1981).

Since *Brown,* the vast majority of cases in which the Sixth Circuit Court of Appeals has included "considered for" as part of the plaintiffs' *prima facie* case involve failure to promote. *See, e.g., Campbell v. University of Akron,* No. 05-4528, 2006 WL 2986404, at * 11 (6th Cir. Oct. 17, 2006); *Grizell v. City of Columbus,* 461 F.3d 711, 719 (6th Cir. 2006); *Sutherland v. Michigan Dept. of Treasury,* 344 F.3d 603, 614 (6th Cir. 2003). Moreover, Sixth Circuit decisions in failure to hire cases have generally not included "considered for the position" as part of the plaintiff's *prima facie* case. *See, e.g., Overall v. Radioshack Corp.,* No. 05-4520, 2006 WL 2986509, at * 2 (6th Cir. Oct. 18, 2006); *Anthony v. BTR Auto. Sealing Sys., Inc.,* 339 F.3d 506, 515 (6th Cir. 2003); *Hall v. Martin Marietta Energy Sys.,* No. 94-5824, 1995 WL 302227 (6th Cir. May 17, 1995). The sole exception is *Pucci v. BASF Corp.,* 55 Fed. Appx. 243, 245 (6th Cir. 2002). *Pucci* involved a failure to hire claim. In listing the elements of plaintiff's *prima facie* case, the court in *Pucci* included "he was considered and denied the position" as the third element, citing *Betkerur v. Aultman Hosp. Assn.,* 78 F.3d 1079, 1095 (6th Cir. 1996)(failure to promote/appoint physician to position of director of neonatology). *Pucci,* however, did not turn upon whether the plaintiff had shown he was considered for the position.

The Court is not persuaded that plaintiff should be required to demonstrate she was considered for the position as part of her *prima facie* case. Requiring a plaintiff to demonstrate she was considered for the position may be appropriate where the plaintiff

applied for the position but was not considered for a readily verifiable reason, such as the application was submitted after the deadline for doing so had passed. Even then, it might be preferable to require the defendant to assert the readily verifiable reason and allow the plaintiff an opportunity to show the stated reason is a pretext for discrimination. For example, in such a case, a plaintiff could demonstrate pretext by showing the defendant considered the applications of similarly situated individuals outside the protected class who also submitted late applications.

In the circumstances this case presents, the failure of defendants to consider an application of a qualified individual could itself give rise to an inference of discrimination. Moreover, defendants are in a unique position to know why plaintiff's application was not considered. If plaintiff can show that she applied and was qualified for the bartender position, then defendants may raise non-consideration as a legitimate, nondiscriminatory reason for not hiring plaintiff.[2]  For these reasons, the Court will require plaintiff to show the following to establish a *prima facie* case of discrimination:

1.     She is a member of a protected class;

2.     she applied for and did not receive the job at issue;

3.     she was qualified for the job; and

4.     similarly situated persons not in her protected class received the job for which she applied.

*See Overall,* at * 2; *Anthony,* 339 F.3d at 515.

---

[2] Plaintiff testified Eli told her "they would look it over and give [her] a call within a couple of days." Barr Dep. at 32. In addition, plaintiff averred Eli assured her they were still in the process of reviewing applications, which would presumably have included plaintiff's application, and that he would get back to her. Barr Dep. at 38. Viewed in the light most favorable to plaintiff, this testimony tends to show plaintiff was considered for the bartender position. Thus, regardless of whether it is an element of her *prima facie* case, plaintiff has submitted evidence that she was considered for the bartender position.

Here, it is undisputed that plaintiff is a member of a protected class. Plaintiff has therefore satisfied the first element of her *prima facie* case as a matter of law.

Plaintiff testified that she filled out a job application before defendants' Columbus restaurant opened, and gave the completed application to a man named Eli. Barr Dep. at 31- 38. Defendants assert plaintiff did not fill out an application for the bartender position before the store opened, pointing out, for example, that plaintiff does not have a copy of her application. Defendants, however, have not come forward with any evidence indicating that applicants for restaurant jobs usually make copies of job applications before submitting them to prospective employers.

Defendants also suggest plaintiff's testimony on this matter conflicts with her prior sworn statement submitted to the EEOC. Specifically, defendants refer to plaintiff's statement in her EEOC charge that she submitted her application "shortly after Respondent began to do business in Columbus, Ohio." Plaintiff explained in her deposition, "when you're hiring, you're doing business in a place. So, technically, they were in business because they were doing hiring." Barr Dep. at 103. In light of this testimony, there is no direct conflict between plaintiff's statement to the EEOC and her later deposition testimony. The Court therefore rejects defendants' argument. The Court concludes plaintiff's testimony creates a genuine issue of material fact as to whether she applied for the bartender position before the restaurant was open. Of course, defendants are free to challenge plaintiff's credibility on the subject at trial.

It is undisputed plaintiff did not receive the job at issue. For the foregoing reasons, the Court finds plaintiff has satisfied the second element of her *prima facie* case for purposes of avoiding summary judgment.

Defendants do not dispute that plaintiff was qualified for the position. Reply (Doc. 57) at 3 n. 3. At the time she allegedly applied for the position, plaintiff had twenty-two years of experience bartending. Kiefer remarked that Barr had "very considerable experience." Kiefer Dep. at 119. He agreed that Barr had a good personality to be a bartender at Smith & Wollensky. *Id.* Kiefer also agreed that Barr was generally qualified to be a bartender at Smith & Wollensky. *Id.* at 120. The Court finds that plaintiff has satisfied the third element of her *prima facie* case.

In their reply brief, defendants argue the male bartenders they hired were not similarly situated with plaintiff. Specifically, defendants contend that unlike the men selected for the bartender positions, plaintiff did not have experience bartending in a high-end restaurant.

To satisfy the fourth element of a *prima facie* case of employment discrimination, the plaintiff must show the defendant hired similarly situated persons outside the protected class. *Anthony,* 339 F.3d at 515. The individuals outside the protected class must be similarly situated to the plaintiff in all relevant aspects. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir. 1998); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). The "aspects" in which the "comparable" must be "similarly-situated" depend on "the factual context in which the . . . case arose." *Id.* Hence, "[t]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated.'" *Ercegovich,* 154 F.3d at 352 (quoting *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir. 1994)). Differences in matters such as job title, responsibilities, experience and work record may be examined to ascertain whether individuals are similarly situated. *Leadbetter v. Gilley,* 385 F.3d 683, 691 (6th Cir. 2004).

Kiefer testified "a significant number of years in a higher end restaurant grabbed my attention." Keifer Dep. at 38.  Nonetheless, he explained that such experience was a consideration, not a requirement. *Id.*  Kiefer did not disqualify individuals who had not worked in a high-end restaurant. *Id.*  Kiefer hired Lee Bernat, who did not list any experience working at a high-end restaurant on his application. *See* Application of Lee Bernat, Ex. 4 to Kiefer Dep.

Although high-end restaurant experience was only a consideration, and not a requirement, it is arguably a relevant aspect for purposes of determining whether the male bartenders defendants hired were similarly-situated to plaintiff.  Nonetheless, defendants also hired Lee Bernat, whose application did list any high-end restaurant experience.  Defendants do not specifically argue that Bernat was not similarly situated to plaintiff.  The Court finds plaintiff has satisfied the fourth element of her *prima facie* case for purposes of avoiding summary judgment.

In sum, plaintiff has demonstrated all four elements of her *prima facie* case.  The Court will proceed to examine whether defendants have stated legitimate, non-discriminatory reasons for not hiring plaintiff, and, if so, whether plaintiff has adduced evidence showing defendants' stated reasons are pretextual.

### C. Pretext

If the plaintiff satisfies all four prongs of her *prima facie* case, the burden shifts to the employer to produce evidence of a legitimate, nondiscriminatory reason for the adverse employment action. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142 (2000); *see also* Hicks, 509 U.S. 502, 506-07 (1993); *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981).

If the defendant comes forward with a legitimate, non-discriminatory reason for its actions, the burden then shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination. *See Hicks,* 502 U.S. at 512, n. 4; *Burdine,* 450 U.S. at 253. "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253.

To demonstrate pretext, a plaintiff must demonstrate either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the adverse employment decision, or (3) that the proffered reasons were insufficient to motivate the adverse employment action. *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 460 (6th Cir. 2004). "In challenging an employer's action, an employee 'must demonstrate that the employer's reasons (each of them, if the reasons independently caused [the] employer to take the action it did) are not true.'" *Smith v. Chrysler Corp.,* 155 F.3d 799, 805-06 (6th Cir. 1998)(quoting *Kariotis v. Navistar Int'l Trans. Corp.,* 131 F.3d 672, 676 (7th Cir. 1997)). In examining whether the stated reason is pretext, the Court must determine whether the employer reasonably relied on the particularized facts before it at the time it made the employment decision. *Id.* at 807. The employer is not required to show that it left no stone unturned; rather, the issue is whether the employer made a reasonably informed and considered decision before taking the adverse employment action. *Id.* The Court should not blindly accept the proffered reason as honest. *Id.* If the employee adduces evidence establishing that the

employer failed to make a reasonably informed and considered decision, then its decisional process is "unworthy of credence," and any reliance by the employer on such a process cannot be deemed "honestly held." *Id.* at 807-08. A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves,* 530 U.S. at 148.

In the instant case, defendants purport to offer four legitimate, non-discriminatory reasons for not hiring plaintiff: (1) plaintiff did not apply for the bartender position and was therefore not considered for the position; (2) there were no bartender positions available when plaintiff spoke with Kiefer in September 2002; (3) plaintiff's application was screened out before the interviewing process due to her lack of high-end restaurant experience or an incomplete application; (4) Kiefer did not hire plaintiff because she did not meet his subjective criteria.

### 1. Applied for and was considered for the position

Defendants' first argue they did not hire plaintiff because she did not apply for the bartender position before the Columbus restaurant opened, and was therefore not considered for the position. As plaintiff points out, defendants do not submit evidence to support their assertion. The portions of the record to which defendants refer in support of this proposition do not support it. *See* Mot. Sum. Jmt. (Doc. 51) at 3, 13, 14; Reply (Doc. 57) at 15.

Assuming, *arguendo,* defendants have met their burden of producing evidence of a legitimate, nondiscriminatory reason for not hiring plaintiff, plaintiff has in any event

demonstrated pretext. Plaintiff submits detailed testimony about her application for a bartender position before the Columbus restaurant opened. If a jury accepted plaintiff's testimony as true, they would necessarily reject defendants' contention that plaintiff did not apply for the position. In addition, plaintiff testified that Eli told her "they would look it over and give [her] a call within a couple of days." Barr Dep. at 32. Moreover, plaintiff testified that Eli assured her that they were still in the process of reviewing applications (which would presumably have included plaintiff's application), and that he would get back to her. Barr Dep. at 38. Viewed in the light most favorable to plaintiff, this evidence gives rise to a genuine issue of material fact as to whether plaintiff was considered for the bartender position.

Viewing the evidence in the light most favorable to plaintiff, the Court concludes a rational jury could accept plaintiff's testimony as true and find that she applied for and was considered for the bartender position. If a jury accepted plaintiff's testimony, it would necessarily conclude that defendants' first proffered reason has no basis in fact. A jury would then be entitled to consider whether plaintiff's pretext evidence, combined with her *prima facie* case, gives rise to an inference of discrimination. *Reeves,* 530 U.S. at 148. This is particularly true given that if a jury credited plaintiff's testimony, it could also find that Eli Levy acted with mendacity. *Id.*

## 2. No positions available in September 2002

Defendants also assert that there were no bartender positions available when plaintiff spoke with Kiefer in September 2002. The Court finds that defendants have provided evidence of a legitimate, nondiscriminatory reason for not hiring plaintiff in September 2002. Plaintiff does not cogently attempt to show that defendants' stated

reason is pretextual in this instance. Defendants are therefore entitled to summary judgment in their favor to the extent plaintiff asserts a claim that defendants failed to hire her in September 2002. This conclusion does not, however, affect plaintiff's claim that defendants failed to hire her earlier in 2002.

### 3. Application screened out

Defendants further contend that even if plaintiff applied for the position, her application was screened out because she did not have experience bartending at a high-end restaurant, or because her application was incomplete. As noted above, defendants interviewed and hired Lee Bernat, who did not list any experience at a high-end restaurant in his job application. *See* Application of Lee Bernat, Ex. 4 to Kiefer Dep. Furthermore, Kiefer did not testify that he would have screened plaintiff's application out because she lacked experience bartending at a high-end restaurant. Viewed in the light most favorable to plaintiff, these facts tend to prove that defendants' proffered reason did not actually motivate them to screen out plaintiff's application. Viewing this evidence, along with the evidence supporting plaintiff's *prima facie* case, a jury could find that defendants discriminated against plaintiff because of her sex. *See Reeves,* 530 U.S. at 148.

Defendants' assertion that plaintiff may not have completed the application is pure speculation, and is not supported by any evidence. As such, it cannot serve as a legitimate, nondiscriminatory reason for not hiring plaintiff. *See Id.* at 142 (defendant must produce *evidence* of a legitimate, nondiscriminatory reason).

### 4. Subjective criteria

Lastly, defendants assert they did not hire plaintiff because she did not meet Kiefer's subjective criteria. Although there is nothing *per se* wrong with subjective

opinions, they are subject to close scrutiny in this context. *See Grano v. Department of Development of the City of Columbus,* 699 F.2d 836, 837 (6th Cir.1983).

Plaintiff argues that defendants' proffered reason must be rejected because there is no evidence that Kiefer failed to hire plaintiff on the basis of his subjective criteria. The Court agrees. There is no evidence that Kiefer ever subjected plaintiff to his subjective criteria. At no point in his deposition does Kiefer state that he would have preferred the other applicants over plaintiff on the basis of his subjective criteria. For these reasons, the Court finds that in this instance defendants have failed to meet their burden of providing evidence of a legitimate, nondiscriminatory reason for not hiring plaintiff.[3]

## IV. Disposition

Based on the above, the Court **GRANTS** defendants' summary judgment motion (Doc. 51) in part and **DENIES** it in part. Defendants are entitled to summary judgment in their favor to the extent plaintiff asserts defendants discriminated against her when they failed to hire her in September 2002. The Court denies defendants' summary judgment in all other respects.

The Clerk shall remove Doc. 51 from the Court's pending motions list.

**IT IS SO ORDERED.**

**MICHAEL H. WATSON, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[3] Plaintiff establishes both a *prima facie* case and pretext without her statistical evidence. The Court reserves ruling on whether plaintiff's statistical evidence would be admissible at trial.
2:04-cv-01131                                                                    Page 18 of 18